IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 0 7 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

MARVA D. PERKINS,

       Plaintiff,

v.

COMPASS GROUP USE, INC d/b/a
CROTHALL HEALTHCARE, INC.,

       Defendants.

CIVIL ACTION NO.
1:06-CV-0512-JEC

## ORDER & OPINION

This case is presently before the Court on defendant's Motion for Summary Judgment [13]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [13] should be **GRANTED**.

## BACKGROUND

### I. Procedural History

On March 12, 2005, Marva D. Perkins ("plaintiff") filed a complaint against Crothall Healthcare, Inc. (incorrectly identified as Compass Group USA, Inc. d/b/a Crothall Healthcare, Inc.) ("Crothall" "defendant") for personal injuries that were allegedly a direct and proximate result of defendant's negligence. (Civ. A. No. 1:05-CV-967-JEC [1]). On April 12, 2005, defendant filed a notice of

removal, and the case was removed to this Court due to diversity between the parties and the amount in controversy exceeding the sum of $75,000 exclusive of interest and costs. ("Notice of Removal" [1].) On September 6, 2005, Grady Health System (the "Hospital") filed a Motion to Intervene. (Civ. A. No. 1:05-CV-967-JEC [15].) The Court granted this motion on October 5, 2005. (Civ. A. No. 1:05-CV-967-JEC [18].)

Crothall filed a Motion for Summary Judgment on November 28, 2005. (Civ. A. No. 1:05-CV-967-JEC [21].) Neither plaintiff nor the Hospital filed a response to Crothall's Motion for Summary Judgment. Plaintiff then filed a dismissal without prejudice. (Civ. A. No. 1:05-CV-967-JEC [26].) The Court granted this motion on January 25, 2006. (Civ. A. No. 1:05-CV-967-JEC [29].)

Plaintiff refiled her complaint in Fulton County on February 9, 2006. ("Compl." [1-3].) Defendant, once again, filed a Notice of Removal on March 3, 2006. ("Mot. to Remove" [1].) The Hospital refiled its Motion to Intervene ("Mot. to Intervene" [8]) on May 3, 2006, and the Court granted the unopposed Motion to Intervene on June 13, 2006. ("June 13, 2006 Order" [9].) On August 2, 2006, defendant filed a Motion for Summary Judgment ("Mot. for Sum. J." [13]), now pending before this Court.

2

## II. Factual Background

Plaintiff is employed by Grady Health System as an Administrative Services Manager. ("Interrog. Resp." attach. as Ex. A to Mot. for Sum. J. [13] at ¶ 5.) On October 10, 2002, the date of the incident, plaintiff was in the transcription office on the third floor of Grady Hospital. (*Id.* at ¶ 7.) Prior to the accident, plaintiff exited the transcription office and headed towards her administrative office, which was around the corner. ("Perkins Dep." attach. as Ex. B to Mot. for Sum. J. at 10:17-18; 12:24-13:4) Plaintiff took approximately four to five steps out of the transcription office when she slipped and fell. (*Id.* at 48:21-49:2.) These steps placed her somewhere between the transcription office and the housekeeping/janitor closet. (*Id.* at 14:1-5; 77:18-22; 27:23- 28:1; Def.'s Statement of Material Facts "DSMF" [14] at ¶ 5.)[1] According to plaintiff, nothing impeded her ability to see or watch where she was going. (*Id.* at 77:4-11; DSMF at ¶ 3.) Plaintiff

---

[1] Plaintiff's response to Defendant's Motion for Summary Judgment does not include a response to Defendant's Statement of Material Facts. In addition, plaintiff does not directly refute defendant's facts with statements supported by specific citations to evidence. Moreover, plaintiff fails to state valid objections to defendant's statement of material facts. Therefore, this Court may deem defendant's statement of material facts admitted for the purposes of deciding this summary judgment motion. *See* N.D.Ga. LR 56.1(B)(2)(a)(2).

3

also indicated that the hallway in which she fell looked "clear."
(Perkins Dep. at 27:23-24.)

Plaintiff landed on her ankle.   (Perkins Dep. at 28:3.)   She
pulled herself along the wall until she reached the administrative
office, where she could see down the hallway and scream for help.
(*Id.* at 28:5-7; DSMF at ¶ 6.)   Plaintiff does not remember seeing any
soiling on the floor as she walked to her office.   (*Id.* at 43:22–
44:2; DSMF at ¶ 7.)

At   the   time   of   plaintiff's   accident,   Ms.   Nicole   Gamble
("Gamble") was employed by defendant, as a discharge cleaner within
Grady Hospital.[2]  ("Gamble Aff." attach. as Ex. C to Mot. for Sum. J.
at ¶ 2; DSMF at ¶ 11.)   Gamble was on duty on the day of plaintiff's
accident.   (Gamble Aff. at ¶ 3.)   Prior to plaintiff's fall, she
received   a   call   from   her   supervisor,   C.J. Frazier   ("Frazier"),
requesting that she clean fecal matter located inside the restroom,
outside the restroom door, and in front of the housekeeping/janitor's

_____

[2]   Grady Hospital entered into a Service Agreement ("Service
Agreement")   with   Crothall   Healthcare,   Inc.   on   April   1,   2000.
(Service Agreement attach. as Ex. 4 to 1:05-CV-967 at 1.)   The
Service Agreement was set to expire on March 25, 2005.   (*Id.* at 9.)
The Service Agreement specifies that "in all aspects [Crothall's]
relationship to Hospital will be that of an independent contractor,
and that it will not act or represent that it is acting as an agent
of Hospital...Hospital and [Crothall] agree and state that they are
completely   separate   and   distinct   entities   and   that   no   statement,
whether oral or written, shall create a relationship between them."
(Service Agreement at 14-15.)

AO 72A
(Rev.8/82)

closet door on the third floor of Grady Hospital.  (Gamble Aff. at ¶ 3; DSMF at ¶ 12.)  Gamble reported to the third floor, inspected the area, and discovered that the fecal matter was located inside the restroom, outside the restroom door and within a 2 x 2 foot radius in front of the housekeeping/janitor's door.  (Gamble Aff. at ¶ 7; DSMF at ¶ 13.)  Before cleaning the affected area, Gamble placed a "wet floor" sign in the hallway so that it was visible from both hallways. (Gamble Aff. at ¶ 9.)   Gamble then cleaned up the fecal matter inside the restroom, outside the restroom door, and within a 2 x 2 foot radius in front of the housekeeping/janitor's closet.  (*Id.* at ¶ 10; DSMF at ¶ 15.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an

5

AO 72A
(Rev.8/82)

essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[3] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[3] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

6

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

II.  Defendant's Status as an Independent Contractor Precludes Premises Liability

Plaintiff's slip and fall occurred on the premises of Grady Hospital. (Pl.'s Resp. to Interrogs. at ¶ 7 attach. as Ex. A to Mot. for Sum. J.)  Under Georgia law, an employee on the premises of his/her employer is considered an invitee. *See Barksdale v. Nuwar*, 203 Ga. App. 184, 185 (Ga. App. 1992) (plaintiff who entered premises for purposes connected with business of homeowner occupied status of

7

invitee). Landowners owe a duty of care to their invitees, as provided in O.C.G.A. § 51-3-1: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. Because an owner/occupier's duties to keep the premises safe are derived from statute (O.C.G.A. § 51-3-1), they are non-delegable, even where a party contracts for another party to provide services.[4] *Johnson v. Kimberly Clark*, 233 Ga. App 508, 510 (Ga. App. 1998) (internal citations omitted). Thus, the duties imposed on owners or occupiers of land are <u>not</u> applicable to independent contractors. *Kelley v. Piggly Wiggly Southern, Inc.*, 230 Ga. App. 508, 509 (Ga. App. 1997) (internal citations omitted); *see also Greene v. Piedmont Janitorial Servs., Inc.*, 220 Ga. App. 743, 744 (Ga. App. 1996) (O.C.G.A. § 51-3-1 does not impose any duty on independent contractor to inspect the premises of the occupier for the safety of the occupier's invitees.)

---

[4] As Grady's duties were non-delegable, one might wonder why the plaintiff did not sue Grady. Presumably, plaintiff did not do so because Grady satisfied any obligation to plaintiff by paying her $31,273.22 as worker's compensation benefits. (Grady's Mot. to Intervene [8].) As an employee can typically not sue an employer for amounts beyond that paid as worker's compensation, the plaintiff was forced to find another defendant to sue if she wished to obtain further compensation.

8

In short, if truly an independent contractor, a defendant should not be held liable under a premises liability theory.  In order to determine whether an entity is an independent contractor, the court must examine whether the employer retained the right to direct the time, manner, methods and means of executing the work as distinguished from the right of the employer to require certain results in accordance with the contract.  *Bell South Telecomm., Inc. v. Widner*, 229 Ga. App. 634, 635 (Ga. App. 1997).

Here, defendant was hired by Grady Hospital as an independent contractor.   Grady Hospital entered into a Service Agreement ("Service Agreement") with Crothall Healthcare, Inc. on April 1, 2000, which was set to expire on March 25, 2005.  (Service Agreement at 1, 9.)   The Service Agreement, therefore, controlled the employment relationship during the relevant time period.  The Service Agreement specifies that "in all aspects [Crothall's] relationship to Hospital will be that of an independent contractor, and that it will not act or represent that it is acting as an agent of Hospital ... Hospital and [Crothall] agree and state that they are completely separate and distinct entities and that no statement, whether oral or written, shall create a relationship between them."   (Service Agreement at 14-15.)

The Service Agreement also indicates that Crothall agreed to "[t]rain, manage and *direct* the Productive Labor in the performance

9

AO 72A
(Rev.8/82)

of Services" (*Id.* at 2) (emphasis added); "[p]erform all administrative duties relating to Productive Labor, including maintaining time records" (*Id.*); "Provide and maintain training equipment, films, slides, literature, daily work and project schedules, software, standard operational procedures, and training manuals to be used in training Productive Labor (*Id.* at 3); and to clean all walls, bathrooms, janitor closets, stairwells, etc. (*Id.* at 4.) Other than specifying general parameters of what services were to be provided, the Agreement does not establish the manner, method, or means of cleaning. The Agreement states that "All Services will be provided in accordance with Hospital's specifications in the RFP, and the Company's proposal submitted in response to the RFP." (Service Agreement at 2.) According to the Service Agreement, the RFP is attached as Schedule I, which contains the Grady Memorial Hospital "Housekeeping Service Specifications." ("Schedule I" attach. to February 9, 2007 Letter to the Court [26].)

Though the Hospital indicated that the cleaning shall be performed according to the RFP, these specifications do not detail the manner and method of performing work, but, rather merely provide guidelines and standards. For instance, Schedule I contains the following specifications: "Dust Mop all heavily-trafficked areas. Once daily." (*Id.* at 2); "Mop up major spills on request 16 hours per day." (*Id.*); "Wash or light scrub hard-surfaced floors, apply non-

10

slip floor finish." (*Id.*); "Vacuum carpeted floor areas. Once daily." (*Id.* at 6.) Thus, these specifications merely provide a guideline and do not specify how, when, and by what method Crothall employees should vacuum, mop, and or clean the Hospital. Additionally, the Service Agreement specifies that Crothall shall train and direct its own personnel. (Contract at 3.)

Even though the Hospital retained the right to negotiate pricing, receive and review reports, and take steps to ensure that Crothall carries out its obligations (Service Agreement at 8, 9, 15), such a reservation of rights is not sufficient to demonstrate that the Hospital directed or controlled the manner of defendant's work. Rather, "'[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.'" *Feggans v. Kroger Co.*, 223 Ga. App. 47, 48-49 (Ga. App. 1996)(internal quotation omitted). Here, there is no evidence that defendant maintained direct control over the services provided by the independent cleaning staff. In fact, Frazier, who acted as Operations Manager for Crothall during the relevant time period, testified that he was responsible for "overseeing the activities of 180 employees to include ordering supplies, directing the activities, supervising four supervisors, conducting monthly audits, monthly inventories, ordering supplies, interacting with the customers..." (Frazier Dep. [21] at 7.) Additionally, Crothall supplied its

11

employees with training materials and training courses. (*Id.* at 13-14.)   Thus, the record indicates that Crothall, and, not Grady, determines the method and manner of cleaning, even though the Hospital may set certain guidelines.

As an independent contractor, Crothall's liability attaches under O.C.G.A. § 51-3-1 only if the landowner delivered possession and control of the property to Crothall. *Tisdale v. U.S.*, 62 F.3d 1367, 1372 (11th Cir. 1995) (if landowner delivers possession and control of property to independent contractor, the independent contractor becomes potentially liable in the landowners' stead to invitees for damages caused by an unsafe condition on the premises); *Johnson v. Kimberly Clark*, 233 Ga. App. 508, 510 (Ga. App. 1998) (landowner remains liable unless landowner delivers full and complete possession of premises to independent contractor on a temporary or permanent basis) (internal citations omitted).   Here, there is no evidence in the record that Grady Hospital surrendered temporary or permanent possession of the premises to Crothall.   Accordingly, plaintiff cannot demonstrate negligence on the part of defendant under a theory of premises liability.

### III. Defendant Did Not Negligently Perform its Contractual Services

A reading of plaintiff's Complaint and her response to defendant's motion for summary judgment suggests that her claim

relies totally on a belief that defendant is responsible for the premises at Grady and that it owed a duty to plaintiff as an invitee on its premises. *See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. [17] at 4-6.[5] In her six page response-brief, the plaintiff does not address the defendant's primary argument in support of summary judgment: that, as an independent contractor, the defendant does not have the same duty to an invitee as does the owner of the premises. Instead, the plaintiff treats the defendant as if it were Grady Hospital, which, clearly, the defendant is not.  Further, the plaintiff did not sue Grady Hospital,[6] yet acknowledges that defendant *is* an independent contractor.  *Id. at 4.*

Defendant contends that plaintiff pled only a premises liability theory and that plaintiff's claim is restricted to same. Nevertheless, "out of an abundance of caution," defendant did brief the question whether, assuming some duty was owed to the plaintiff, the defendant breached such a duty. *See* Def. Crothall's Br. in Supp. of Mot. for Summ. J.[13] at 15 n.1.  The Court will do the same.

Though defendant enjoys the status of an independent contractor, and, thus, cannot be held liable for premises liability, defendant may be liable to third parties for its own negligent performance.

---

[5]  Plaintiff did not paginate her memorandum; the page numbers are derived from the numbers assigned by the CM/ECF docketing system.

[6]  See note 4 on page 8, *supra.*

13

AO 72A
(Rev.8/82)

*Kelley*, 230 Ga. App. at 509 (duty imposed on owner or occupier under O.C.G.A. § 51-3-1 not applicable to independent contractor; however, independent contractor has "duty to use ordinary care in their floor cleaning and cleanup assignment.") Thus, the Court must determine whether defendant breached its duty to use ordinary care when cleaning the hallway in which plaintiff slipped.

Plaintiff states that she slipped on the third floor of Grady Hospital, approximately four to five steps outside of the transcription office. (*Id.* at 48:21-49:2.) She describes the area in which she fell more specifically as in-between the transcription office door and the janitor/housekeeper's closet door. (*Id.* at 14:1-5; 77:18-22; 27:23-28:1.) Plaintiff does not contend that she fell on any particular substance or matter. In fact, plaintiff testifies that when she left the transcription office, the "hallway [in which she fell] was clear." (Perkins Dep. at 27:23-24.) Plaintiff testified that she did not notice anything wet on the floor, but after she fell her skirt felt wet. (*Id.* at 30:3-7). Plaintiff never testified that she saw feces on the floor or on herself.

Prior to plaintiff's fall, Gamble, a housekeeper employed by defendant, had been called by her supervisor to attend to a bio spill on the third floor of Grady Hospital. (Gamble Aff. at ¶ 3; "Gamble Dep." at 13:4-14.) According to Gamble's unrefuted testimony, she reported to the third floor and discovered fecal matter inside the

14

restroom, outside the restroom door, and within a 2 x 2 foot radius in front of the housekeeping/janitor's door. (Gamble Aff. at ¶ 7; Gamble Dep. at 13:13-14.)

Gamble also testified that when she got to the third floor and saw the feces she placed a wet floor sign in the hallway, and positioned it in such a manner that it was visible from either hallway. (Gamble Dep. at 15:4-7; 30:8-15; Gamble Aff. at ¶ 9.) Gamble then placed germicide on the floor to clean up the feces, and subsequently mopped the floor with warm water. (Gamble Dep. at 14:11-25.)

According to Gamble she mopped from "right..in front of the [janitor/housekeeper] closet" to the bathroom and inside the bathroom; plaintiff states that she did not mop past the janitor/housekeeper's closet. (Gamble Aff. at ¶ 11; Gamble Dep. at 29:15-17; 32:17-18.) Plaintiff, however, testified that she fell before she reached the janitor/housekeeper closet. (Perkins Dep. at 14:1-5; 77:18-22; 27:23-28:1.) Thus, the evidence indicates that the housekeeper did not mop the area in which plaintiff fell.

Though the housekeeper testified that she had mopped in the area where plaintiff fell,[7] she could not know if this was the case because Gamble was inside the bathroom at the time plaintiff slipped.

---

[7] See Gamble Dep. at 31:22-32:1: "Q: So she had fallen in the area where you had just mopped?" A: Yes."

(Gamble Dep. at 32:15-33:18; 21:21-25.)   Specifically, Gamble did not witness the fall because, according to plaintiff, after the fall she "pulled [herself] along the wall to [a] doorway and leaned up outside the doorway where [she] could see down [the] hallway."   (Perkins Dep. at 47:25-48:2.)   It was at this time that plaintiff saw the housekeeper come out of the bathroom.   (*Id.* at 48:4-5.)   Because Gamble did not see plaintiff fall and only saw plaintiff's position after she had slipped and maneuvered down the hallway, Gamble could not know where plaintiff had originally fallen.   The housekeeper's testimony that she had mopped where plaintiff fell is mere speculation.   At most, the housekeeper can testify that she mopped where plaintiff ended up after pulling herself down the hallway. Because the Court must discount this testimony as not being based on the witness's personal knowledge, the Court can only rely on the direct evidence of the housekeeper that she mopped the area right outside the janitor/housekeeper closet to the bathroom and inside the bathroom.

At the same time, plaintiff testifies that she had never reached the janitor/housekeeper closet when she fell.   (*Id.* at 14:1-5; 77:18-23; 27:23-28:1.)   Thus, the record indicates that plaintiff did not fall in an area that had been mopped by Gamble.   Plaintiff merely surmises that she fell on a wet substance placed on the floor because her skirt was wet, and because the housekeeper said she had sprayed

16

the floor.  (Gamble Dep. at 30:7-14.)  However, Gamble testified that she neither sprayed nor mopped the floor in the area that plaintiff fell.  (Gamble Aff. at ¶ 11 "At no time did I spray any substance on the hallway floor or clean the hallway floor anywhere past the housekeeping/janitor's closet door.")  Similarly, plaintiff did not notice any shine or sheen on the floor.  (Perkins Dep. at 43:24-44:2.)

Plaintiff's mere speculation that she fell on a wet substance placed on the floor, does not raise a genuine issue of material fact. In *Christopher v. Donna's Country Store*, 236 Ga. App. 219 (Ga. App. 1999), the court held that plaintiff's case could not survive defendant's motion for summary judgment because plaintiff failed to identify evidence demonstrating that an act or omission on the part of the defendant caused her injuries.  Plaintiff alleged that she fell on a greasy substance in defendant's parking lot, despite the fact that she neither saw the greasy substance before or after her fall.  *Id*. at 219.  Plaintiff based her allegation on the fact she noticed a greasy substance on her arms and clothing after she slipped.  *Id*.  The court concluded that plaintiff merely recounted an "unfortunate event," that she failed to demonstrate that she slipped on something or nothing at all, and, thus, that she did not raise any evidence that defendant's actions proximately harmed her.  *Id*. at 220.

AO 72A
(Rev.8/82)

Here, though plaintiff offers her own testimony that Gamble had "sprayed" the area in which she fell (Perkins Dep. at 30:9-11), plaintiff, herself, does not know what caused her fall, and Gamble testifies that she did not clean anything past the janitor/housekeeper closet. As in *Christopher*, plaintiff did not see anything on the ground before or after her fall, and she did not produce anyone who saw any substance on the ground. *Id*. at 220. The fact that plaintiff's skirt felt damp after her fall is not sufficient to raise a genuine issue of material fact. *See Christopher*, 236 Ga. App. at 219 (fact that plaintiff noticed a greasy substance on her arms and clothing did not raise a genuine issue of material fact.) The only evidence in this case refutes an assertion that plaintiff fell on any substance placed on the floor. Gamble testified that she did not mop the area extending beyond the janitor's closet. Barring any evidence that plaintiff's cleaning process extended beyond the janitor/housekeeper closet, plaintiff cannot demonstrate that defendant's cleaning or the bio spill proximately caused her injuries.

Furthermore, even if plaintiff fell on an area of the floor mopped by Gamble, plaintiff's claim cannot survive summary judgment because she cannot demonstrate that defendant was negligent in the application of the warm water to the floor. In *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 623-624 (1980), the Georgia Supreme Court

18

differentiated plaintiff's burden in cases, such as this one, involving the application of a wax or other finish to the floor, rather than an inappropriately placed foreign substance. In *Alterman Foods*, 246 Ga. at 623-624, the Georgia Supreme Court held that "slip and fall cases involving foreign substances are inapplicable in an instance where the plaintiff alleges that he fell because of the slippery wax, oil or other finish that defendant placed on the floor." In such a case, because the defendant is presumed to have knowledge of the application it placed on the floor, plaintiff need only prove an act or omission on the part of the defendant, which was the proximate cause of his/her injury and which could not have been avoided by the plaintiff in the exercise of reasonable care. *Id.* at 624 (internal citations omitted). However, the court cautioned that where plaintiff's claim rests upon proving defendant's negligence in maintaining a waxed and slippery floor, the "'proof of nothing more than the occurrence of the fall is insufficient to establish the proprietor's negligence.'" *Id.* (internal quotation omitted). The plaintiff must show, at a minimum, that the defendant was either negligent in the materials used or in the application of them. As the court noted, "'What the law requires is not warranty of the safety of everybody from everything, but such diligence toward making the store safe as a good business man is in such matters accustomed to use.'" *Id.* (internal quotation omitted).

19

AO 72A
(Rev.8/82)

Here, because plaintiff does not proffer any evidence, or even speculate, that she fell on anything other than a substance applied to the floor by defendant, this case falls under the *Alterman* standard. Plaintiff, therefore, must demonstrate that defendant was either negligent in the materials used or the application of the substance to the floor. In the present case, plaintiff has failed to show that any act or omission on the part of Crothall violated the standard of care. First of all, plaintiff does not assert any negligence in the materials used by defendant. Defendant used germicide on the bio spill and then mopped the floor with warm water. There is no evidence in the record that such a procedure does not comply with the applicable standard of care. Moreover, plaintiff offers no evidence that defendant acted negligently with respect to the application of the germicide or warm water. Before Gamble began the cleaning processing, she placed a wet floor sign between two hallways so that the sign would be visible from either direction. (Gamble Dep. at 15:4-7; 30:8-15; Gamble Aff. at ¶ 9.) Plaintiff does not refute that Gamble placed a wet floor sign on the floor.

Although plaintiff may not have seen the wet floor sign, Gamble's placement of the sign between the intersecting hallways complied with the reasonable standard of care. It should also be noted that plaintiff testified that the hallway was clear (Perkins Dep. at 27:23-24), and, thus, nothing impeded her view. *See*

AO 72A
(Rev.8/82)

*Stockstill v. Prime Foods Sys., Inc.*, 216 Ga. App. 192, 193 (Ga. App. 1995), holding that defendant could not be held liable since, even though plaintiff may not have seen them, at least four wet signs had been placed before the mopping procedure began.  As the court stated, "'This was reasonable and ordinary care on [appellee's] part, even assuming...[appellant] did not have equal knowledge of the hazard. To say otherwise would render [appellee] an insurer of its customers' safety, which (it) is not in this state.'"  *Id.* (quoting *Alterman Foods v. Munford*, 178 Ga. App. 214, 215 (1986).  Similarly, plaintiff's placement of the wet floor sign in-between the two hallways, before she began her clean-up process, complies with applicable standard of care.  Accordingly, the Court grants summary judgment to defendant on the above theory of liability.

IV.   O.C.G.A. § 51-3-25 Does Not Apply to This Case

For the first time in this case, in her response to defendant's Motion for Summary Judgment, plaintiff advances a new theory of liability.  Specifically, plaintiff argues that pursuant to O.C.G.A § 51-3-25, Crothall is liable for its willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity.  O.C.G.A. § 51-3-25 states that "[n]othing in this article limits in any way any liability which otherwise exists: (1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."  O.C.G.A. § 51-3-25.

21

First, it should be noted that plaintiff failed to assert a claim that defendant violated O.C.G.A. § 51-3-25 in her Complaint. A non-moving plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion for summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1313 (11th Cir. 2004) (per curiam). Because Perkins did not assert this claim at an earlier stage in the litigation, she may not now raise it for the first time in opposition to defendant's Motion for Summary Judgment. *See id*.

Furthermore, even if this Court considered plaintiff's contention, there is no evidence that defendant is liable under O.C.G.A. § 51-3-25. Plaintiff has cited a provision from Georgia's Recreational Property Act ("RPA") (O.C.G.A. §§ 51-3-20-51-3-26.) The RPA provides, that except for the specific exceptions expressly stated in O.C.G.A. § 51-3-25, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes." OCGA § 51-3-22. An exemption from liability exists for a landowner's "willful or malicious failure to guard or warn against" dangers. OCGA § 51-3-25. Recreational purposes under the Act, include, but are not limited to, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study,

22

water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites. *Carroll v. City of Carrollton*, 280 Ga. App. 172, 173-174 (Ga. App. 2006). Because plaintiff cannot argue that she entered Grady Hospital for recreational purposes, this statute is inapplicable to plaintiff's claims.

In addition, even if Grady Hospital could be deemed a "recreational" area, the provision permitting liability would not be applicable to the premises at issue, as the Hospital, as business owner and occupier of the "recreational" premises, may not delegate its duty to keep the premises in reasonably safe condition. *See R&S Farms, Inc. v. Butler*, 258 Ga. App. 784, 786 (Ga. App. 2002). Furthermore, even if defendant could be deemed an owner of recreational premises at Grady, defendant would be liable only if it acted maliciously or willfully, and plaintiff has offered no evidence that defendant so conducted itself, as plaintiff concedes that defendant only had "constructive knowledge of the hazardous condition." (Opp'n to Mot. for Sum. J. at 5.) Thus, at most, defendant could have only been negligent and could not have been willful or malicious. In short, plaintiff cannot prevail on this newly-added theory.

23

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Summary Judgment [13].

SO ORDERED, this ___ day of March, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

24